The Trustees of the Illinois and Michigan Canal, appellants, *vs.* Elizabeth Dewes and others, appellees.

*Appeal from Cook.*

The Legislature, in 1837, authorized the canal commissioners to construct a canal basin at the confluence of the two branches of the Chicago river, and directed them to appropriate block fourteen, in Chicago, for the purpose, and to permit the owners thereof to receive block seven—the property of the canal—in payment, at its appraised value. In 1843, an act was passed, granting the canal and canal property to trustees, who were required to proceed and complete the canal, and sell the canal lands and lots. In March, 1845, another act was passed, directing the trustees to proceed forthwith and perfect the appropriation of block fourteen, and the appraisal and exchange of block seven, as required by the act of 1837. In June, 1845, the canal and the property belonging to it, passed into the hands of the trustees. They refused to appropriate block fourteen, and advertised block seven for sale. Held, that the owners of block fourteen could not, by bill in equity, compel the trustees to take that block, for the purposes of the canal, and have block seven appraised and exchanged therefor.

This cause was heard at the May term, 1850, of the Cook Circuit Court, before H. T. Dickey, Judge. The facts of the case are sufficiently set forth in the opinion of the Court.

J. M. Wilson and I. N. Arnold, for appellants.

J. H. Collins and G. Goodrich, for appellees.

Opinion by Treat, C. J.:

The seventh and eighth sections of "An act to provide for the sale of certain canal lands, and for other purposes," approved July 21st, 1837, are as follows:

"Sec. 7. The canal commissioners are authorized to enlarge the natural basin, at the confluence of the north and south branches of the Chicago river, so as to render the same as useful and convenient as possible; and block number seven, of the canal lots, in the city of Chicago, shall be reserved from sale, for the purpose of exchanging the same for block number fourteen,

which will be required to be removed in the enlargement of the basin; and the said commissioners are hereby required to cause the aforesaid block number fourteen to be appropriated for the purpose aforesaid, and to proceed to obtain the title to the same in the manner provided by law for obtaining lands or materials for the use of the canal.

" Sec. 8. When the board of appraisement shall appraise the said block fourteen, they shall also appraise the aforesaid block seven; and if the owners of block fourteen will take in exchange for the same block seven, at the appraisement thereof, the canal commissioners are authorized to make the exchange, taking from the said owners a sufficient conveyance for said block to the state, and giving to such owners a certificate of purchase for block seven, stating therein the facts of the transaction ; and if block seven shall be appraised to more than block fourteen, the said owners shall be required to pay the difference in a reasonable time, to be fixed by the canal commissioners ; and upon such payment being made, the said owners shall be entitled to a patent for the same ; but if the said block shall be valued to less than block fourteen, or the same sum, they shall be entitled to a patent, upon executing the conveyance aforesaid. If the difference in value shall be in favor of the said owners, the canal commissioners shall pay the same out of the canal fund; but if no such arrangement is made as herein contemplated, the aforesaid block fourteen shall, nevertheless, be obtained and appropriated, as herein provided, and block number seven shall be subject to sale as other lots in Chicago now are."

By the provisions of the "Act to provide for the completion of the Illinois and Michigan canal, and for the payment of the canal debt," approved February 21st, 1843, the canal and all the unsold lands and lots belonging to the canal fund, were irrevocably granted to the trustees of the Illinois and Michigan canal, as security for the loan authorized by that act, for the purpose of completing the canal. The eighth section of the act declares, that the board of trustees " shall possess all the powers and perform all the duties conferred upon the board of commissioners of the Illinois and Michigan canal." The thirteenth section provides, that " the said board of trustees, when appointed, are hereby authorized to take possession of the said canal, pro-

75

perty and assets, granted to them by this act, and proceed to complete the same. They are hereby authorized to make such changes and alterations of the original plan of said canal as they may deem advisable, without reducing its present capacity, or materially changing its present location, having due regard to economy, permanency of the work, and an adequate supply of water for all seasons." By the same section, the trustees are required, after the completion of the canal, to sell all the lands, lots and water power granted to them by the act. The eighteenth section repeals so much of the former laws, in relation to the canal, as conflicts with the provisions of this act.

The seventh section of the "Act to drain a marsh in Gross Point precinct, in Cook county, and for other purposes," approved March 3d, 1845, is as follows : " The seventh section of 'An act to provide for the sale of certain canal lands, and for other purposes,' approved July twenty-first, one thousand eight hundred and thirty-seven, is hereby so amended as to authorize the trustees, who may be appointed in pursuance of an act to provide for the completion of the Illinois and Michigan canal, and the payment of the canal debt, approved February twenty-first, one thousand eight hundred and forty-three, to cause block number fifteen, in the original town of Chicago, to be appropriated, if they shall think proper, for the same purpose as is block fourteen of said city, by virtue of said first mentioned section. And the said commissioners or trustees shall proceed forthwith to perfect the exchange of block fourteen aforesaid, for block seven, as contemplated by the said act, to which this section is an amendment; and also, in like manner, under the provisions of said act, to obtain the title to said block fifteen."

The canal property was conveyed to the trustees, on the 26th day of June, 1845.

In September, 1848, Dewes and others filed a bill in chancery against the trustees of the Illinois and Michigan canal, alleging, in substance, that they were the owners of block fourteen, referred to in the foregoing acts, and were ready and willing to exchange the same for block seven, as contemplated by those acts ; that the trustees had refused to comply with the provisions of said acts, and had advertised block seven for sale, with the design of disposing of the same. The bill prayed that the trustees might be enjoined from selling block seven, and compelled to

cause blocks fourteen and seven to be appraised and exchanged, in the manner prescribed by the act of 1837.

The Court overruled a demurrer to the bill, and, on the failure of the defendants to answer, entered a decree against the trustees, in accordance with the prayer of the complainants. To reverse that decree, the trustees have prosecuted an appeal to this Court.

We are not aware of any principle of equity jurisprudence, upon which this bill can be sustained. This is not a suit to compel the specific execution of a contract; for no contract was ever made between the state and the complainants, respecting the lots in question. The complainants never made any proposition for the sale or exchange of the lots, that was acceded to on the part of the state. Nor have they accepted any proposition made to them by the state. There is not the slightest pretence for insisting that there has been any contract, express or implied, which a Court of Equity can be called on to enforce. The complainants have acquired no subsisting interest, legal or equitable, in block seven. The complete title to that block is in the trustees. The complainants are still the absolute owners of block fourteen, with full power to dispose of it as they please. Their title has not been divested, either by their own voluntary act, or by virtue of any proceedings instituted for that purpose, by the state, or those charged with the prosecution and management of the canal. They have not, in any manner, been disturbed in the enjoyment of their property, or prevented from improving or selling the same. It is true, the block may some day be taken for public purposes. And so may the property of any other individuals. But, until proceedings are had with the view of appropriating the block for the purposes of the canal, the complainants can have no just cause for complaint. It will then be in time for them to invoke the aid of the Courts for the protection of their rights, if the same are in danger of being invaded or disregarded. The block may never be appropriated. But, if it shall be, the complainants will be entitled to recover a just compensation—a compensation that will embrace the full value of the ground, at the time it is taken, together with the improvements thereon, without reference to the time the same were erected.

The act of the 21st of July, 1837, was not an appropriation of block fourteen, but simply a declaration on the part of the Legislature, that it would be required in the construction of the canal basin, and a direction to the canal commissioners to have it condemned for the purposes of the canal. The act was altogether executory in its character. It contemplated the taking of the block at some future day. It vested no rights in the complainants. It neither divested their title, nor affected their existing rights. It was then, and still is, in the power of the Legislature, at least with the assent of the trustees, to repeal or modify the provisions of the act. The act conferred no authority on the complainants to appeal to a Court of Equity, to compel the commissioners to proceed and execute the will of the Legislature. The commissioners were responsible to the state, and not to the complainants, for any failure to discharge the duties imposed by that act. The state alone could compel them to comply with the requisitions of the law. The complainants had no such interest in the contemplated arrangement, as would authorize them to insist that the commissioners should carry it into effect. Even if the provisions of the acts of 1837 and 1845, are obligatory on the trustees, the case is in no respect altered. The complainants have no greater rights against the trustees than they had against the commissioners.

Nor did those acts vest in the complainants any present interest in block seven, which gives them the right to insist that the canal basin shall be constructed, and the blocks exchanged. The most that they could possibly claim, under the provisions of those acts, would be the right, upon the appropriation of block fourteen, to receive block seven in payment at its appraised value. But that right has not attached. Their block has not been taken, and never may be. The basin has not been constructed, and perhaps never will be. Their claim to block seven was altogether contingent, depending entirely on the previous appropriation of block fourteen. The taking of the latter block was to be a precedent act. It was to be first appropriated for the purpose of constructing the canal basin, before the complainants could occupy a position to compel, if at all, an exchange of the property, as contemplated by the Legislature. Having no present interest in block seven, the complainants have no right to call upon a Court of Equity to interfere and prevent the sale.

If the trustees have no discretion in the matter, and are proceeding in violation of their duties, the state alone can complain of their conduct. The law must be vindicated by the state, whose interests are affected, and whose directions are disregarded; and not by individuals, who may have a fancied or contingent, but not a real or subsisting interest in the question. It is purely a matter between the state and the trustees, to be settled and adjusted exclusively by them.

We have not considered it necessary to examine or discuss the question, whether the arrangement designed by the act of 1837 is binding on the trustees. It is enough that the complainants have not, in our opinion, showed themselves to be interested in its decision.

The decree of the Circuit Court will be reversed, with costs, and the bill dismissed.

*Decree reversed.*